UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:13-CV-425-TBR

JOYCE WATFORD                                                                                          PLAINTIFF

v.

JEFFERSON COUNTY PUBLIC SCHOOLS, *et al.*                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Plaintiff Joyce Watford's motion for partial summary judgment. (Docket #34). Defendant Jefferson County Board of Education has filed a response and cross-motion for summary judgment. (Docket #36, 37). Defendant Jefferson County Teachers Association has also filed a response and cross-motion for summary judgment. (Docket #38). Watford has replied to both. (Docket #41, 42). Defendants have replied. (Docket #44, 46). This matter is now ripe for adjudication. For the following reasons, Watford's motion for partial summary judgment is DENIED and Defendants' motions for partial summary judgment are GRANTED.

BACKGROUND

This action arises out of Plaintiff Dr. Joyce Watford's employment as a teacher in the Jefferson County Public Schools system. Watford was hired in 1999 and worked at the Westport Middle School ("Westport"). In 2009, Watford was transferred to Kennedy Metro Middle School ("Kennedy Metro"). Watford allegedly engaged in unprofessional conduct on several occasions leading to multiple suspensions. On October 13, 2010, Watford was terminated.

Defendant Jefferson County Board of Education ("School Board") and Defendant Jefferson County Teachers Association ("Teachers Association") have entered into a collective bargaining agreement ("CBA"). Article 29 of the CBA establishes a tiered grievance process for employees to report complaints. (Docket #34-4). An employer must first lodge a complaint

with their immediate supervisor. The employee may then appeal to the Superintendent. If the employee is still unsatisfied, then the Teachers Association may initiate arbitration. Under Article 9, an employee who has been terminated may elect to use this arbitration process or "the tribunal process provided for by statute." (Docket #34-4). Furthermore, "[i]f the employee opts to pursue a complaint using another agency, the parties agree to hold the grievance in abeyance until the agency complaint is resolved." (Docket #34-4).

After her termination on October 13, 2010, Watford elected to pursue the grievance process. Her grievance was denied by the school principal and the Superintendent's designee. The parties arranged for arbitration to be held in July, 2011. (Docket #36-5).

Watford filed her first Charge of Discrimination[1] with the Equal Employment Opportunity Commission ("EEOC") in February, 2011. (Docket #34-3). Watford alleged she "was subjected to adverse terms and conditions of employment, harassed, disciplined and terminated because of my sex, Female, my race, Black, and also in retaliation for having complained of illegal discrimination." (Docket #34-3). The School Board notified the Teachers Association that Watford's grievance "will be held in abeyance until the outcome of the EEOC complaint filed by Ms. Watford is resolved." (Docket #37-7).

Watford filed her second Charge of Discrimination[2] in September, 2012. (Docket #34-5). Watford alleged she was retaliated against when her request for arbitration was denied because she filed her first Charge of Discrimination. The EEOC found "there is reasonable cause to believe that the Respondent held Charging Party's grievance proceedings in abeyance in retaliation for her filing a charge of discrimination" with the EEOC. (Docket #34-6). The School Board requested the EEOC reconsider its holding. The School Board argued the EEOC

---

[1] Charge of Discrimination 474-2011-00452

[2] Charge of Discrimination 470-2012-03096

2

erred in concluding Watford's grievance had been dismissed pursuant to a severance plan.  It argued Watford's grievance was only held in abeyance in accordance with the terms of the CBA negotiated between the School Board and the Teachers Association.  (Docket #34-7).  The EEOC rejected the School Board's arguments, urged the School Board to change its policy and offer Watford monetary relief, and offered to conciliate the dispute.  (Docket #34-9).

Watford's first Charge of Discrimination was resolved on January 31, 2013, when the EEOC issued a Dismissal and Notice of Rights.  (Docket #37-9).  The parties scheduled a three-day arbitration hearing to be held on April 23, 24, and 25, 2013.  During the second day of arbitration Watford served the School Board with this lawsuit.  (Docket #38-1).  The School Board requested that the arbitrator suspend those proceedings.  The School Board responded that Article 9 required the arbitration to be stayed and it was the past practice of the School Board to hold claims in abeyance while they were being decided by another agency to avoid inconsistent rulings.  The Teachers Association, who represented Watford during arbitration, opposed the School Board's request.  The arbitrator found that there was a "common nucleus of fact, raising the possibility of different factual findings by each forum."  (Docket #34-13).  The arbitrator also found the law was unsettled as to whether an employer who suspends arbitration pending another hearing has discriminated against the employee.  The arbitrator ultimately decided to hold the arbitration in abeyance pending the resolution of this lawsuit.  (Docket #34-13).

Watford filed her third Charge of Discrimination[3] in October, 2013.  Watford alleged she was retaliated against because "the Board is holding my arbitration in abeyance pending resolution of my lawsuit."  (Docket #34-10).  Watford also amended her complaint in this case to add the Teachers Association as a defendant, claiming the Teachers Association discriminated

---

[3] Charge of Discrimination 470-2013-03310

3

against Watford by holding her grievance proceedings in abeyance. Watford seeks to have Article 9 of the CBA declared unenforceable as a *per se* violation of Title VII of the ADEA.

Watford now moves for partial summary judgment on her retaliation claims in Count IV and Count V of her amended complaint. Watford also request this Court compel arbitration of her grievance claim and hold these claims in this case in abeyance pending the outcome of that arbitration. The School Board and Teachers Association have filed cross-motions for summary judgment.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present evidence on which the trier of fact could reasonably find for her. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

DISCUSSION

The primary issue before this Court is whether Defendants took an adverse employment action against Watford. It is unsettled in the Sixth Circuit whether an employer's stay of arbitration pending litigation pursuant to a collective bargaining agreement constitutes an adverse employment action. The Second and Seventh Circuits have reached conflicting conclusions. The Court will (I) explain why it agrees with the Second Circuit's approach that suspending arbitration is not an adverse employment action. The Court will then address (II) Watford's argument that the Sixth Circuit would follow the Seventh Circuit. Finally, the Court will (III) deny Watford's request that this case be sent to arbitration.

## I. The Circuit Split on Defining Adverse Employment Action.

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.' *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting § 2000e–3(a)). To make a *prima facie* showing of retaliation a plaintiff must show (1) she engaged in a protected activity; (2) "this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff," and (4) "causal connection between the protected activity and the adverse employment action." *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).[4]

---

[4] The parties cite to the standard for proving an indirect claim of discrimination under the *McDonnell Douglass* formula. However, Watford claims the Defendants employed a facially discriminatory policy. A "facially discriminatory employment policy . . . is direct evidence of discriminatory intent." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "It is well settled that if a plaintiff presents direct evidence of discrimination, she need not proceed under the *McDonnell Douglas* formula." *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 879 (6th Cir. 1991). Regardless of the standard applied, both require an adverse employment action.

An "adverse employment action" is "defined as a materially adverse change in the terms and conditions of plaintiff's employment." (citation and punctuation omitted) *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004); *see also Burlington*, 548 U.S. at 68 ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms) (emphasis in original). "Examples of materially adverse actions are 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities.'" *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 470 (6th Cir. 2012) (*Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461–62 (6th Cir.2000)).

An employee has the statutory right to pursue a discrimination claim in federal court. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). An employee may also have a contractual right, often established by a collective bargaining agreement, to pursue discrimination through a grievance process or arbitration. *Id*. "Both [statutory and contractual] rights have legally independent origins and are equally available to the aggrieved employee." *Id*. at 52. In *Gardner-Denver*, the Supreme Court held that an employee who submits their dispute to arbitration does not forfeit their statutory right to pursue a Title VII claim, even though the contractual right and statutory right arise from the "same factual occurrence." *Id*. at 47-50.[5]

The parties dispute whether Defendants took an adverse employment action against Watford when they stayed her arbitration pending resolution of her EEOC complaint and this litigation. This issue is unsettled in the Sixth Circuit. The parties cite to cases from the Second and Seventh Circuits which have reached opposing conclusions.

---

[5] In *Livadas*, the Supreme Court clarified that its ruling in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) did not conflict with *Gardner-Denver*, despite the perceived inconsistency. *Livadas v. Bradshaw*, 512 U.S. 107, 128 n. 21 (1994).

Watford cites to the Seventh Circuit case *Board of Governors* in support of her position. *EEOC v. Bd. of Governors of State Colleges & Univs.*, 957 F.2d 424 (7th Cir. 1992).  In *Board of Governors*, Professor Raymond Lewis filed a grievance with the teacher's union after he was not recommended for tenure.  *Id.* at 426.  The grievance process was protracted.  As it approached the statute of limitations for filing an EEOC claim, the union recommended that Lewis file an age discrimination claim.  The teacher's union and the school board had signed a collective bargaining agreement.  Article 17.2 of that agreement provided that if an employee "seeks resolution of the matter in any other forum, whether administrative or judicial, the Board or any University shall have no obligation to entertain or proceed further with the matter pursuant to this grievance procedure."  *Id*.  Acting pursuant to Article 17.2, the school board terminated Lewis's pending arbitration.  Lewis claimed Article 17.2 was a retaliatory policy.  The Seventh Circuit agreed, finding Article 17.2 retaliatory because it "authorizes the Board to take an adverse employment action (termination of the in-house grievance proceeding) for the sole reason that the employee has engaged in protected activity (filing an ADEA claim)."  *Id.* at 424.  The Seventh Circuit held that a "retaliatory policy constitutes a *per se* violation of Section 4(d)."  *Id*. at 429.

Defendants cite to the Second Circuit case of *Richardson*, which reached the opposite conclusion when presented with the same issue. *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 117 (2d Cir. 2008).  Leonyer Richardson, a fiscal administrative officer, disputed with her supervisor the proper method for making bank deposits.  Richardson was ultimately terminated.  She filed both a grievance through her union and a charge with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which coincidentally was her employer.  *Id*. at 118.  The union and the CHRO had entered into a collective bargaining

agreement. It contained an election-of-remedies provision which stated: "disputes over claimed unlawful discrimination shall be subject to the grievance procedure but shall not be arbitrable if a complaint is filed with the Commission on Human Rights and Opportunities arising from the same common nucleus of operative fact." *Id*. When the union learned that Richardson had filed a discrimination complaint, the union withdrew its grievance. Richardson claimed the union's act was retaliation. *Id*. The Second Circuit disagreed, finding the "union had no contractual obligation to continue pursuing arbitration." *Id*. at 124. It found that the policy was not discriminatory because it "does not foreclose other avenues of relief, such as the right to pursue claims in federal court." *Id*. at 123. The "election-of-remedies provision also avoids duplicative proceedings." Id. "Accordingly, the election-of-remedies provision seems to qualify as a 'reasonable defensive measure' utilized by Richardson's employer to litigate discrimination claims brought against it effectively and efficiently." *Id*. at 124. The Second Circuit criticized *Board of Governors* because it "assumes, without explanation, that an employer's decision to withdraw from arbitration constitutes an adverse employment action, even though the language of the CBA explicitly authorizes such action." *Id*, 532 F.3d at 125.

This Court agrees with the Second Circuit. An election-of-remedies provision streamlines dispute resolution. It avoids the expense and uncertainty of having the same issue decided in two different proceedings. It puts no restriction on an employee's freedom to file an EEOC complaint or a lawsuit. "It only requires that the employee make a concrete choice, at a specific time, between filing a [claim with the EEOC] and having the union pursue his or her grievance in arbitration." *Richardson*, 532 F.3d at 124. Furthermore, this choice is only required if the grievance process extends far enough to threaten the statute of limitations for filing an EEOC claim.

8

This Court questions whether the Seventh Circuit's approach actually benefits employees, a concern shared in part by the Seventh Circuit. As *Board of Governors* acknowledged, "the employer had no obligation to provide its employees with a right to grievance procedures at all." *Board of Governors*, 957 F.2d at 430. That right arises out of the collective bargaining agreement negotiated between the employer and the union. The Seventh Circuit held the arbitration process must proceed even if the employee files an EEOC complaint or a lawsuit because otherwise the employee might be "deter[red]" from doing so. *Id*. at 431. In a concurring opinion, Judge Manion expressed concern that the *Board of Governors* decision would incentivize employers to remove arbitration from future collective bargaining agreements:

> Of course, the advantage of the grievance procedure, which could result in binding arbitration, was that a just result could be achieved without literally making every employment dispute a federal case. This procedure would be a much less expensive and probably more efficient method to resolve disputes. . . .
>
> But while the EEOC has advanced a technically correct reading of § 4(d), my concern is that the EEOC's approach will eliminate the contractual grievance procedure as a viable option for a Union member to use as an alternative means to resolve a dispute. Without Article 17.2, the Board has little incentive to offer a grievance procedure in lieu of seeking a resolution in some other forum. As it is, the collective bargaining agreement would offer an incentive for both sides to resolve the issue quickly, before statutes of limitations or other time limits expire. If the grievance procedure wasn't working, the Union member could turn to the courts (or some other form of arbitration), thus overriding the grievance procedure. Now the Union member will be permitted to operate in two forums, and presumably take the best deal. But the Board may see no benefit in doubling its exposure and adding to the costs of its administrative and legal defense. Thus, it could conclude that if court action must be an alternative, it will be the only alternative. It seems to me that this rigid result was not really the goal of our federal laws against discrimination." <u>Bd. of Governors</u>, 957 F.2d at 432 (J. Manion, concurring).

This Court agrees with the Second Circuit that allowing an employer and union to define the scope of the contractual right to arbitration is the prudent approach. The Court also agrees that allowing an employer to take a "reasonable defensive measure," such as participating in arbitration until the employee files a claim in federal court, does not constitute an adverse action.

*Richardson*, 532 F.3d at 124. "At some level of generality, any action taken by an employer for the purpose of defending against the employee's charge can be characterized as adverse to the employee." *United States v. New York City Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996). "Even mediation and settlement are steps that an employer takes to promote its ultimate self-interest." *Id*. "Reasonable defensive measures do not violate the anti-retaliation provision of Title VII, even though such steps are adverse to the charging employee and result in differential treatment." *Id*.

The facts of this case are somewhat different. Absent a statute of limitations issue Watford controls whether she files a lawsuit which stays the arbitration. In this case, Watford began the arbitration hearing. On the second day of the hearing Watford filed the instant lawsuit, which caused the stay. Perhaps the timing was coincidental. Perhaps Watford felt she would rather pursue her federal lawsuit instead of continuing her arbitration hearing. There certainly is no fault in making those choices. If she has not filed this lawsuit at that time and exhausted the arbitration she still could have filed suit. However, the Court is not without some reservation and believes this to be a close call.

    **II.**    ***Sundance* and Other Cases Addressing Adverse Employment Action.**

Watford cites to three district court cases from the Sixth Circuit in support of her argument that the Sixth Circuit would follow *Board of Governors*. As a general matter, a "federal district court is not bound by the decision of another district court." *United States v. Johnson*, 34 F. Supp. 2d 535, 538 (E.D. Mich. 1998). The Court finds these cases are unpersuasive.

The first case, *Wedding v. Univ. of Toledo*, did adopt the reasoning of *Board of Governors*. 884 F. Supp. 253, 255 (N.D. Ohio 1995). However, the Sixth Circuit reversed the

district court and held "it erred in addressing the substantive question" of whether terminating arbitration was an adverse action. *Wedding v. Univ. of Toledo*, 89 F.3d 316, 319 (6th Cir. 1996).

Two other district court cases have adopted the reasoning of *Board of Governors*. *Brinkley v. Bd. of Comm'rs of Franklin Cty., Ohio*, 2013 WL 394158, at *1 (S.D. Ohio Jan. 29, 2013); *Trayling v. St. Joseph Cty. Employers Chapter of Local No. 2955*, 953 F. Supp. 2d 793, 793 (W.D. Mich. 2013). Both *Brinkley* and *Trayling* interpreted the Sixth Circuit's opinion in *EEOC v. Sundance Rehab. Corp.*, 466 F.3d 490 (6th Cir. 2006) as "suggest[ing] approval of *Board of Governors*' basic reasoning." *Brinkley*, 2013 WL 394158, at *4; *see also Trayling*, 953 F. Supp. 2d at 798. This Court disagrees and finds that *Sundance* merely discussed *Board of Governors* without accepting or rejecting its holding. *Sundance* states:

> We do not find the Seventh Circuit's *Board of Governors* opinion to be compelling precedent with respect to this case. In *Board of Governors*, the employer actually took an adverse action against the employee because the employee had pursued the statutorily protected activity of filing a charge with the EEOC. That action clearly constituted retaliation in violation of 29 U.S.C. § 623(d). While the Seventh Circuit addressed what it determined to be the facially retaliatory CBA provision that purported to authorize that action, that policy was before the Seventh Circuit because the employer had implemented it and had engaged in a retaliatory act. Here, SunDance has offered a contract, and, on the record before us, has engaged in no further action. *Sundance*, 466 F.3d at 498.

*Brinkley* and *Trayling* viewed the statement—"[t]hat action clearly constituted retaliation"—as evidence that the Sixth Circuit would endorse *Board of Governor*'s reasoning. This Court views the following sentence—"[w]hile the Seventh Circuit addressed what it determined to be the facially retaliatory CBA provision"—as evidence that the Sixth Circuit was merely discussing the Seventh Circuit's opinion. The Court does not believe the Sixth Circuit made a clear statement that it was endorsing the rationale of *Board of Governors*. Furthermore, *Sundance* makes clear that its discussion of *Board of Governors* is dicta and therefore that discussion is not

11

binding. *See Coca-Cola Co. v. Procter & Gamble Co.*, 822 F.2d 28, 30 (6th Cir. 1987). Finally, the Sixth Circuit decided *Sundance* before the *Richardson* decision. This Court cannot conclude that when presented with the competing rationales of *Board of Governors* and *Richardson*, the Sixth Circuit would adopt *Board of Governors*.

The School Board also argues *Brinkley* and *Trayling* are factually distinguishable from this case because both dealt with the termination of arbitration proceedings whereas in this case Watford's arbitration proceedings were merely suspended. At least one district court from the Seventh Circuit has distinguished *Board of Governors* on these grounds. *U.S. E.E.O.C. v. Chrysler Grp., LLC*, 2011 WL 693642, at *12 (E.D. Wis. Feb. 17, 2011). In *Chrysler Group*, an auto worker filed a grievance as well as a claim of discrimination with the EEOC. Similar to this case, the auto worker's claim was stayed (but not terminated) pending resolution of her EEOC complaint. The *Chrysler Group* court held that "[u]nlike in *Board of Governors*, here, the EEOC presents no evidence that Hobbs and Zahn have been deprived of the grievance procedures provided for in the CBA. At worst, the grievance process has been delayed." *Id*. at *12. This Court has not adopted the rationale of *Board of Governors* and therefore needs not make the distinction that *Chrysler Group* has made.

### III. Watford's Request for Arbitration.

If a party requests that a claim be arbitrated, a court must first determine "whether the parties have executed a valid arbitration agreement" and then decide whether the claim "falls within the scope of that agreement." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311-12 (6th Cir. 2000); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute"). "[A]s with any other contract, the parties'

intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi*, 473 U.S. at 626. A party who lacks a contractual right to compel arbitration may seek a discretionary stay but bears a "heavy burden of showing necessity for the discretionary stay." *Asahi Glass Co. v. Toledo Eng'g Co.*, 262 F. Supp. 2d 839, 845 (N.D. Ohio 2003).

Article 9 of the CBA states: "The employee may select either the tribunal process provided for by statute or the arbitration process provided for in this Agreement. . . . If the employee opts to pursue a complaint using another agency, the parties agree to hold the grievance in abeyance until the agency complaint is resolved." (Docket #36-4). The Court finds that the plain terms of the CBA allow for arbitration proceedings to be suspended pending resolution of this case.

In the absence of a contractual right to compel arbitration, Watford must show why this case should be stayed pending resolution of arbitration. Watford argues this Court should nevertheless compel arbitration and stay this case because the in her arbitration – that she terminated without "just cause" – are distinguishable from her retaliation claim in this case. (Docket #41).

The Court disagrees and finds the claims in this case and Watford's arbitration arise out of the same set of facts and include the similar claim that Watford was discriminated against. Watford's arbitration arises out of seven grievances. Each grievance alleges, in part, that the School Board violated Article 5 of the CBA. Article 5 prohibits "discrimination against any employee by reason of race, creed, color, marital status, gender, disability, age, national origin, or whether said employee is a member of the Association." (Docket #36-4). Article 5 does not discuss termination for cause. Most grievances also explicitly state Watford was discriminated

13

against in some way. For instance, Watford claimed she "got a 5-day suspension for telling someone to leave me alone after that person had singled me out for abuse which also included arbitrary, unusual, and discriminatory treatment." (Docket #44-8). Separately, Watford claimed Principal Reid attempted to "scapegoat me, to harass me, and to discriminate against me for his failings and shortcomings." (Docket #44-9). Watford filed one grievance in part due to "dual expectations" and "discrimination, harassment, and intimidation." (Docket #44-5). The Court is not persuaded by Watford's argument that the arbitration and this litigation involve different facts or claims. Accordingly, the Court will deny Watford's request to compel arbitration and stay this case.

## CONCLUSION

For the foregoing reasons, Watford's motion for partial summary judgment on Count IV and Count V (Docket #34) is **DENIED** and Defendants' motions for partial summary judgment (Docket #37, 38) are **GRANTED**.

A **TELEPHONIC CONFERENCE IS SET ON FEBRUARY 22, 2016 at 11:45 a.m. Eastern (Louisville) Time.** The Court shall place the call to counsel.

cc:     Counsel of Record