# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed:  September 01, 2017

Mr. Benjamin S. Basil
Mr. Don C. Meade
Priddy, Cutler, Naake & Meade
2303 River Road, Suite 300
Louisville, KY 40206

Ms. Gail S. Coleman
U.S. Equal Employment Opportunity Commission
Office of General Counsel
131 M Street, N.E., 5SW24L
Washington, DC 20507

Mr. Andrew Dutkanych III
Biesecker & Dutkanych
411 Main Street
Evansville, IN 47708

Ms. Amanda Warford Edge
Mr. Christopher Tyson Gorman
Wyatt, Tarrant & Combs
500 W. Jefferson Street, Suite 2800
Louisville, KY 40202

Mr. Krista Ann Willike
Biesecker Dutkanych & Macer
101 N. Seventh Street
Louisville, KY 40202

Re: Case No. 16-6183, *Watford v. Jefferson County Pub. Schools, et al*
Originating Case No. : 3:13-cv-00425

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. Vanessa L. Armstrong

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0203p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

JOYCE WATFORD,

      *Plaintiff-Appellant,*

      *v.*

JEFFERSON COUNTY PUBLIC SCHOOLS,

      *Defendant,*

JEFFERSON COUNTY BOARD OF EDUCATION; JEFFERSON COUNTY TEACHERS ASSOCIATION,

      *Defendants-Appellees.*

No. 16-6183

Appeal from the United States District Court for
the Western District of Kentucky at Louisville.
No. 3:13-cv-00425—Thomas B. Russell, District Judge.

Argued: March 9, 2017

Decided and Filed: September 1, 2017

Before: DAUGHTREY, MOORE, and GIBBONS, Circuit Judges.

---

### COUNSEL

**ARGUED:** Andrew Dutkanych III, BIESECKER, DUTKANYCH & MACER, LLC, Louisville, Kentucky, for Appellant. C. Tyson Gorman, WYATT, TARRANT & COMBS, LLP, Louisville, Kentucky, for Appellee Board of Education. Benjamin S. Basil, PRIDDY, CUTLER, NAAKE & MEADE, PLLC, Louisville, Kentucky, for Appellee Teachers Association. Gail S. Coleman, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Andrew Dutkanych III, Krista A. Willike, BIESECKER, DUTKANYCH & MACER, LLC, Louisville, Kentucky, for Appellant. C. Tyson Gorman, Amanda Warford Edge, WYATT, TARRANT & COMBS, LLP, Louisville, Kentucky, for Appellee Board of Education. Benjamin S. Basil, Don Meade, PRIDDY, CUTLER, NAAKE & MEADE, PLLC, Louisville, Kentucky, for Appellee Teachers Association. Gail S. Coleman,

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

MOORE, J., delivered the opinion of the court in which DAUGHTREY, J., joined. GIBBONS, J. (pp. 11–15), delivered a separate dissenting opinion.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  At issue in this employment-discrimination case is a collective bargaining agreement ("CBA") negotiated and signed by Defendants-Appellees Jefferson County Board of Education ("JCBE") and Jefferson County Teachers Association ("JCTA").  Under the CBA, if an employee believed that they were discriminated against, that employee could file a grievance with JCBE.  However, if the employee subsequently filed a charge with the Equal Employment Opportunity Commission ("EEOC"), the CBA required that the grievance proceedings be held in abeyance.  Such was the case here. Watford filed a grievance on the day she was terminated—October 13, 2010—and those proceedings are still in abeyance.  Frustrated that her grievance proceedings were held in abeyance simply because she filed an EEOC charge, Watford brought this case, alleging that JCBE and JCTA retaliated against her for filing an EEOC charge.  The district court awarded summary judgment against Watford, an award that is inconsistent with this court's admonition that "an adverse action against [an] employee because the employee had pursued the statutorily protected activity of filing a charge with the EEOC" is "clearly" retaliation.  *See EEOC v. SunDance Rehabilitation Corp.*, 466 F.3d 490, 498 (6th Cir. 2006).  Because of this inconsistency, and because the CBA is retaliatory on its face, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

Watford's eleven-year teaching career with Jefferson County Public Schools ("JCPS") came to an end when JCPS terminated her on October 13, 2010.  R. 40-4 (Termination Letter at 4) (Page ID #883).  In Watford's termination letter, the JCPS superintendent claimed that her final two years were marked by "insubordination and conduct unbecoming a teacher."  *Id.*

Believing that her termination was instead due to discrimination on the basis of race, sex, and age, Watford filed a grievance with Defendant-Appellee Jefferson County Board of Education ("JCBE") on the very day she was terminated.  R. 44-7 (Watford Grievance No. T11-017-09-06) (Page ID #1171).  So began Watford's case.

## A.  The Collective Bargaining Agreement

At the heart of this dispute is the CBA between JCBE and JCTA.  The CBA, which stipulates to teachers' rights—from academic freedom to school safety—contains grievance procedures in the event "that there has been a violation, misinterpretation or improper application of one or more specific provisions of this Agreement or any complaint alleging improper, arbitrary, or discriminatory conduct."  R. 36-4 (CBA art. 29, § A.1) (Page ID #400).  Grievances begin with informing the teacher's "immediate supervisor or the appropriate administrator" and may be appealed up the hierarchy to the superintendent.  *See id.* art. 29, § D (Page ID #402).  If the teacher is still unsatisfied with the superintendent's decision, the JCTA may submit the grievance to arbitration.  *Id.* (Page ID #403).  Throughout, the grievance process is intended to proceed "as rapidly as possible," with time limits set at each stage (which, naturally, may "be extended by mutual agreement").  *See id.* (Page ID #401–04).

The CBA also places limits on potential grievants' choice of remedies.  Kentucky has a dispute resolution process for teachers called an "administrative hearing tribunal," *see* Ky. Rev. Stat. Ann. § 161.790 (West 2006), and teachers covered by the CBA must select either the tribunal process or the grievance process; they cannot pursue both.  *See* R. 36-4 (CBA art. 9, § D) (Page ID #326).  In addition, and centrally to this case, "[i]f the employee opts to pursue a complaint using another agency, the parties agree to hold the grievance in abeyance until the agency complaint is resolved."  *See id.*  Finally, the CBA stipulates that "[t]he Association and the aggrieved party will be required to exhaust this Grievance Procedure including arbitration before seeking alternative remedies, provided that by doing so they will not be deemed to have waived or otherwise prejudiced any constitutional, statutory, or other legal rights that they may have."  *Id.* art. 29, § I.3 (Page ID #405).

No. 16-6183          *Watford v. Jefferson Cty. Pub. Sch. et al.*          Page 4

## B. Watford's Discrimination and Retaliation Allegations

As alluded to earlier, Watford has thoroughly availed herself of grievance procedures and EEOC charges.  After the JCPS superintendent dismissed Watford's aforementioned grievance, *see* R. 44-7 (Superintendent Decision Grievance No. T-11-017-09-06) (Page ID #1172), Watford sought to have the grievance arbitrated along with six other grievances she had filed before she was terminated.  R. 36-5 (Feb. 11, 2011 E-mail from Bethel to Partee) (Page ID #428–29).  Although the parties tentatively scheduled an arbitration to begin in July 2011, *id.*, an EEOC charge that Watford filed against JCPS[1] on February 24, 2011, R. 34-3 (Charge No. 474-2011-00452) (Page ID #151), caused the arbitration to be held in abeyance.  R. 37-7 (Feb. 25, 2011 Letter from Meredith to Flaherty) (Page ID #610).

Disappointed that the arbitration would not proceed as scheduled, Watford filed another EEOC charge, this time alleging that the arbitration was held in abeyance in retaliation for filing an EEOC charge.  R. 37-8 (Charge No. 24J-2011-00066) (Page ID #612).  A little over one year later, the EEOC issued a determination that there was "reasonable cause to believe that the [JCPS] held [Watford's] grievance proceedings in abeyance in retaliation for her filing a charge of discrimination with the [EEOC]."  R. 34-6 (Determination for Charge No. 24J-2011-00066) (Page ID #207–08).  After receiving this determination, Watford filed a related EEOC charge against JCTA, stating that she "requested that JCPS grant [her] the right to pursue arbitration of [her] grievances through . . . JCTA" but that her "request for arbitration was denied because [she] had filed a complaint of discrimination."  R. 34-5 (Charge No. 470-2012-03069) (Page ID #206).

Several months later, on January 31, 2013, the EEOC issued a dismissal and notice of rights with respect to Watford's initial EEOC charge, noting that its investigation into whether JCPS violated Watford's Title VII rights was inconclusive.  R. 37-9 (Dismissal & Notice of Rights Charge No. 474-2011-00452) (Page ID #614).  Arbitration then commenced on April 23,

---

[1]Although Watford initially named JCPS in her EEOC charge and district-court complaint, R. 34-3 (Charge No. 474-2011-00452) (Page ID #151); R. 1 (Compl. at 1) (Page ID #1), the parties agreed to substitute JCBE "as the proper party for the currently named Defendant, Jefferson County Public Schools."  R. 7 (Agreed Order) (Page ID #35).

2013.  R. 38-4 (Arbitration Op. & Award at 2) (Page ID #649); *see also* R. 37-10 (Watford Dep. at 126–27) (Page ID #617).

On April 24, 2013, the second day of arbitration, Watford filed her complaint in the United States District Court for the Western District of Kentucky, naming JCPS as the defendant,[2] and alleging age discrimination, race discrimination, and retaliation in the form of her termination and holding the arbitration in abeyance.  R. 1 (Compl.) (Page ID #1–11).  In response, JCBE filed a motion to hold the arbitration in abeyance until the suit was resolved, and on August 9, 2013, the arbitrator agreed to do so.  R. 38-4 (Arbitration Op. & Award at 12) (Page ID #659).

On October 25, 2013, Watford filed another EEOC charge, this time alleging that JCBE retaliated against her by holding the arbitration in abeyance for filing a district-court complaint.[3]  R. 34-10 (Charge No. 470-2013-03310) (Page ID #216).  The EEOC issued a notice of right to sue with respect to this charge on December 31, 2014.  R. 34-20 (Notice of Right to Sue within 90 Days Charge No. 470-2013-03310) (Page ID #265).

## C.  Procedural History

The underlying issues in this appeal arose when Watford filed a motion for partial summary judgment, claiming that the evidence unequivocally showed that "JCPS retaliated against [her] by holding her arbitration proceedings relating to her termination in abeyance" and that "JCTA retaliated against [her] by acquiescing to the enforcement of Article 9, Section D." R. 34-1 (Pl.'s Mem. Law in Support of Her Mot. Partial Summ. J. at 8–9) (Page ID #146–47). JCBE and JCTA individually opposed Watford's motion and filed cross-motions for partial summary judgment.  R. 36 (JCBE's Cross-Mot. Summ. J.) (Page ID #269–70); R. 38 (JCTA's Cross-Mot. Summ. J.) (Page ID #623–24).  Of the view that the abeyance provision of the CBA

---

[2]Watford amended her complaint to add JCTA and other retaliation counts on December 30, 2014.  R. 21 (Am. Compl.) (Page ID #78–91).

[3]It appears that Watford filed a similar charge against JCTA, *see* R. 34-1 (at 4) (Page ID #142), although this charge is not in the record.  However, Watford purports to have the notice of right to sue associated with this charge, which the EEOC issued on September 29, 2014.  R. 34-18 (Notice of Right to Sue Charge No. 470-2013-03311) (Page ID #263).

was not an adverse employment action, the district court awarded summary judgment against Watford with respect to Counts IV (Retaliation—Grievance) and V (Retaliation—Arbitration) on February 17, 2016. *Watford v. Jefferson Cty. Pub. Sch.*, 163 F. Supp. 3d 456, 462–63 (W.D. Ky. 2016).

Several months after the district court issued its decision, Watford filed a motion for voluntary dismissal with respect to the remaining counts, I through III (Age Discrimination, Race Discrimination, and Retaliation—Termination), pursuant to Federal Rule of Civil Procedure 41(a)(2).  R. 60 (Pl.'s Mot. Voluntary Dismissal) (Page ID #1686).  The district court granted Watford's motion and closed the case.  R. 62 (Order Granting Pl.'s Mot. Voluntary Dismissal) (Page ID #1694).  Shortly thereafter, Watford filed her notice of appeal with respect to the district court's order on the motion and cross-motions for partial summary judgment. R. 63 (Notice of Appeal) (Page ID #1695).

## II. DISCUSSION

We begin by addressing whether JCTA is a labor organization and whether, as such, it is exposed to liability under the anti-retaliation provisions.  We then address whether JCBE and JCTA's conduct amounted to an adverse employment action, the central question on appeal.

### A.  JCTA's Status as a Labor Organization

JCTA raises two issues apart from the central question of whether the abeyance provision of the CBA constitutes an adverse employment action:  (1) that we lack jurisdiction over JCTA and (2) that it could not have retaliated against Watford because it advocated on her behalf and did not seek to hold proceedings in abeyance.

First, and as a preliminary matter, JCTA argues that we lack jurisdiction because JCTA is assertedly not a "labor organization" pursuant to 29 U.S.C. § 630 or 42 U.S.C. § 2000e.  *See* JCTA's Br. at 1.  However, the "labor organization" designation is located in the definitions section of the ADEA and Title VII, a "provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'"  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394

(1982)), *discussed in Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 549–50 (6th Cir. 2006). It is therefore not a jurisdictional prerequisite. *See id.* Moreover, JCTA did not raise this argument below, R. 38-1 (JCTA's Mem. of Law in Opp'n to Pl.'s Mot. Partial Summ. J. & in Support of Cross-Mot. for Partial Summ. J.) (Page ID #625–40), and so it is forfeited. *See Lucaj v. FBI*, 852 F.3d 541, 547 n.4 (6th Cir. 2017). As to the true jurisdictional question, we observe that the district court had jurisdiction over this Title VII and ADEA case pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Second, whether or not JCTA advocated on behalf of Watford against JCBE's interpretation of the CBA, the fact remains that JCTA signed the CBA in the first place. "A union's role as a joint participant in the negotiation of a collective bargaining agreement has been found sufficient to render it liable under Title VII where the contractual provisions were discriminatory in operation or perpetuated the effects of past discrimination." *Farmer v. ARA Servs., Inc.*, 660 F.2d 1096, 1104 (6th Cir. 1981) (citing, inter alia, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 348 n.30 (1977)). As "a joint participant in the negotiation of a collective bargaining agreement," *id.*, JCTA is liable for agreeing to contractual provisions that "discriminate against any member . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (2012); *see also* 29 U.S.C. § 623(d) (2012). Therefore, if the provisions of the CBA discriminate on this retaliatory basis, JCTA is exposed to liability under Title VII and the ADEA. We discuss below whether these provisions are retaliatory.

**B. Adverse Employment Action**

The dispositive question on appeal is straightforward: Is it a materially adverse action if a CBA requires grievance proceedings to be held in abeyance upon the filing of an EEOC charge? Watford argues that it is, *see* Appellant's Br. at 13–14, a position that JCTA took in prior stages of this litigation, JCTA's Br. at 9. JCBE argues and the district court held that it is not. *See* JCBE's Br. at 10; *Watford*, 163 F. Supp. 3d at 463. In our view, the facts of this case perfectly illustrate why holding grievance proceedings in abeyance, a step that has interminably stalled procedures intended to "be processed as rapidly as possible," R. 36-4 (CBA art. 29, § D)

(Page ID #401–02), would dissuade a reasonable worker from making or supporting a charge of discrimination.

In order to "prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006), the act contains the following anti-retaliation provision: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . or for a labor organization to discriminate against any member thereof . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The ADEA contains a nearly identical anti-retaliation provision, 29 U.S.C. § 623(d), which is functionally equivalent for purposes of this analysis. *See Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007).

The focus of this appeal concerns whether JCBE and JCTA's actions constitute an adverse employment action: that is, an employer "discriminate[s] against any of his employees," 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d), if its actions "would have been materially adverse to a reasonable employee or job applicant." *Burlington N.*, 548 U.S. at 57. Significantly, "Title VII's substantive provision and its antiretaliation provision are not coterminous"; the scope of the anti-retaliation provision is broader than the substantive provision. *Id.* at 67. In keeping with this broader scope, we have held that terminating an in-house grievance proceeding because the employee filed an EEOC charge "clearly constituted retaliation in violation of 29 U.S.C. § 623(d)." *SunDance*, 466 F.3d at 498 (citing *EEOC v. Bd. of Governors of State Colls. & Univs.*, 957 F.2d 424, 430 (7th Cir. 1992)); *see also Trayling v. St. Joseph Cty. Emp'rs Chapter of Local #2955*, 953 F. Supp. 2d 793, 798 (W.D. Mich. 2013), *appeal dismissed* 751 F.3d 425 (6th Cir. 2014) (dismissing the appeal because the district court's order was not a final, appealable decision); *Brinkley v. Bd. of Comm'rs*, No. 2:12–CV–00469, 2013 WL 394158, at *4–5 (S.D. Ohio Jan. 29, 2013); *Wedding v. Univ. of Toledo*, 884 F. Supp. 253, 255 (N.D. Ohio 1995), *rev'd on other grounds*, 89 F.3d 316 (6th Cir. 1996).

Because this court has characterized the termination of grievance proceedings as an adverse employment action, *SunDance*, 466 F.3d at 498, the dispositive question in this case is whether there is a material difference between terminating a grievance and holding it in abeyance.  We hold that there is not a material difference.  Both provisions make the availability of remedies contingent on not filing an EEOC charge.  Singling out employees or union members on this basis "discriminate[s]" against them because they "opposed any practice made an unlawful employment practice by" Title VII and the ADEA.  42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  And "[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free . . . not to provide the benefit at all."  *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984), *cited in Bd. of Governors*, 957 F.2d at 430.

The CBA's effect on a reasonable employee is not softened merely because grievances are held in abeyance rather than terminated.  Employees avail themselves of the grievance process at least in part because grievances are supposed to "be processed as rapidly as possible." R. 36-4 (CBA art. 29, § D) (Page ID #401–02).  However, because the CBA requires grievances to be held in abeyance upon the filing of an EEOC charge, *id.* (Page ID #402), rapidity was never a realistic outcome for a charge-filing individual like Watford.  Because the statute of limitations for filing an EEOC charge ran three hundred days after Watford was terminated, she had three hundred days to resolve her grievance before it would be held in abeyance.  But on average, individuals wait 399 days after filing a grievance to receive an arbitration award, William H. Holley et al., *The Labor Relations Process* 569 & n.69 (11th ed. 2016) (citing Fed. Mediation & Conciliation Serv., https://www.fmcs.gov/).  And in Watford's case, in part because proceedings were held in abeyance, she waited 923 days until arbitration even began.  *Compare* R. 40-4 (Termination Letter at 4) (Page ID #883), *with* R. 38-4 (Arbitration Op. & Award at 2) (Page ID #649).

Thus, Watford was presented with a false binary:  either choose a speedy, extrajudicial resolution to her claims through the CBA's grievance procedures or file an EEOC charge.  Faced with this choice, many reasonable employees would be dissuaded from filing an EEOC charge, preferring instead to resolve their claims quickly and outside of the judicial process.  Of course,

we encourage alternative dispute resolution, but not at the expense of Title VII and the ADEA's guarantees. "A charge filed with the EEOC is not a complaint seeking relief. Rather it informs the EEOC of possible employment discrimination." *SunDance*, 466 F.3d at 499. Employment practices that interfere with this information-gathering system run afoul of Title VII and the ADEA. And because the CBA does just that, we hold that it violates the antiretaliatory provisions of those statutes.

Defendants argue in response that *Richardson v. Commission on Human Rights & Opportunities*, 532 F.3d 114 (2d Cir. 2008), should guide our decision in this case. We disagree. With due respect to our sister circuit, *Richardson* applied an outdated definition of "adverse employment action" that is inconsistent with *Burlington Northern*. Under *Richardson*, the Second Circuit held that an employer may take "reasonable defensive measures" so long as they "d[o] not affect the complainant's work, working conditions, or compensation, and that its control over the handling of claims against it served several essential purposes that have nothing to do with retaliation, malice, or discrimination." *Richardson*, 532 F.3d at 123 (internal quotation marks and alterations omitted) (quoting *United States v. N.Y.C. Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996)). As such, *Richardson*'s focus was on whether "the election-of-remedies provision [at issue] qualif[ied] as a 'reasonable defensive measure.'" *Id.* at 124. Our focus, as the Supreme Court has instructed, is broader. We ask whether a reasonable employee would be dissuaded from filing a charge. As the Court observed, "the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." *Burlington Northern*, 548 U.S. at 68–69. Simply put, "the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." *Id.* at 57. And because the *Richardson* court so confined the forbidden actions and harms, its reasoning does not guide our decision.

### III. CONCLUSION

Title VII and the ADEA protect employees from employers and labor organizations who would restrict the employees' ability to file EEOC charges. In recognition of this principle, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

---

**DISSENT**

---

JULIA SMITH GIBBONS, Circuit Judge, dissenting.  In this appeal, we are asked to determine whether Joyce Watford suffered an adverse employment action for the purposes of establishing retaliation under Title VII and the Age Discrimination in Employment Act (ADEA). The alleged adverse action is a decision by the Jefferson County Board of Education (the Board) to stay her grievance proceedings after she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) (Count IV) and again after she filed suit in federal court (Count V).  The Board did so in accordance with the terms of a collective-bargaining agreement (CBA) that governed the terms of Watford's employment.  The majority concludes not only that the Board's actions constituted an adverse employment action but also that the CBA is facially retaliatory.  It does so, in part, by treating the resolution of Watford's claims as a natural and logical extension of our decision in *EEOC v. Sundance Rehabilitation Corp.*, 466 F.3d 490 (6th Cir. 2006).  I disagree with the weight of authority placed on *Sundance*, the conclusion that Watford suffered an adverse employment action, and the finding that the CBA is facially retaliatory.  I would affirm the district court's grant of summary judgment by finding, as a matter of law, that staying a grievance when an employee files an EEOC charge or discrimination lawsuit does not constitute retaliation under Title VII or the ADEA.  Therefore, I respectfully dissent.

I.

The majority begins with an assumption that the district court's grant of summary judgment is inconsistent with our decision in *Sundance*.  It cites *Sundance* for the proposition that terminating grievance proceedings because an employee files an EEOC charge clearly constitutes retaliation.  Although the *Sundance* court did opine that terminating grievance proceedings constitutes an adverse employment action, the entire discussion is dicta.

*Sundance* involved an EEOC challenge to the terms of an employer's separation agreement.  466 F.3d at 495.  The EEOC argued that the agreement was "facially" or "*per se*"

retaliatory because it conditioned benefits on a promise not to file an EEOC charge against the employer. *Id.* at 495–96. The court addressed this argument, in part, by looking to *EEOC v. Board of Governors of State Colleges & Universities*, 957 F.2d 424 (7th Cir. 1992), which involved a CBA provision allowing an employer to terminate grievance proceedings if the employee sought relief in any other forum. *See Sundance*, 466 F.3d at 497–98. The *Sundance* court opined that this constitutes an adverse action and was clearly retaliation because the grievance proceedings were terminated when the plaintiff filed an EEOC charge. *Id.* The court, however, concluded that *Board of Governors* was not "compelling precedent with respect to [the] case." *Id.* It distinguished *Board of Governors* as involving a policy that was actually enforced, whereas the employer in *Sundance* had only offered a contract with a problematic term. *Id.* The court emphasized that *Board of Governors* was "factually distinguishable and inapplicable to this case." *Id.* at 500–01. It ultimately concluded that offering the agreement was not retaliatory without reaching the question of whether the provision, itself, constituted retaliation. *Id.* at 500–01. For this reason, *Sundance* does not control our decision here. Instead, we are faced with an issue of first impression.

Additionally, even if *Sundance* were directly applicable in this case, its analysis does not compel the majority's conclusion. The *Board of Governors* CBA discussed in *Sundance* gave that employer the right to *terminate* an employee's pending internal grievance proceeding if she pursued relief in any other forum. *See Sundance*, 466 F.3d at 497–98 (discussing *Board of Governors*, 957 F.2d at 426–30). Here, Watford's internal grievance is not terminated but is instead held in abeyance during the pendency of her EEOC claim. The majority asserts that staying a grievance and terminating a grievance are not materially different because both "make the availability of remedies contingent on not filing an EEOC charge." But an ordering of remedies—as is the case here—is not the same as an election of remedies. Yes, the CBA requires that Watford resolve EEOC and judicial avenues of relief before finishing arbitration. But filing an EEOC charge or a lawsuit does not eliminate her ability to pursue arbitration; that is, it does not necessarily require her to forego one at the expense of the other. Instead, Watford will have every opportunity to return to her internal grievance after pursuing her charge of discrimination in another forum. Thus, even were *Sundance*'s discussion of *Board of Governors* properly considered here, the terms of this CBA are fundamentally different.

II.

Watford did not suffer an adverse employment action when her grievance was held in abeyance pursuant to the CBA, and thus she should not succeed on her retaliation claims.  In order to benefit from the protections of the ADEA and Title VII, Watford must show that defendants' actions were "materially adverse to a reasonable employee."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  This "means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id.*  The majority believes that the CBA will dissuade a reasonable worker from making a charge of discrimination, whether it be filing a complaint with the EEOC or filing a discrimination suit.  I disagree.

First, the majority claims that Watford was forced to choose between "speedy, extrajudicial resolution to her claims through the CBA's grievance procedures" and pursuing an EEOC charge.  It supports this proposition with the fact that the average person waits 399 days to receive an arbitration award.  That fact, however, really has no import in this case.  It says nothing about the average time claims are resolved under *this* CBA.  The majority also notes that Watford waited 923 days, in part, because her grievance was held in abeyance.  This ignores important context as well as the terms of the CBA.

Under this CBA, employees will rarely have to make a choice about ordering their remedies.  The CBA provides a process for employee grievances with specific deadlines and a stated intent that a grievance "be processed as rapidly as possible."  DE 34-4, Page ID 200–02.  This is not merely aspirational language.  An employee must notify her supervisor of a grievance within 15 days of any incident.  After an attempt at an informal resolution, the employee can file a written grievance, and a school administrator must respond within 3 days.  From there, the employee has 10 days to submit the grievance to the school's superintendent.  The superintendent then has 12 days to hold a hearing and issue a written decision.  At this point, the decision of how to proceed is turned over to the union, which has 25 days to decide whether it will seek arbitration of the grievance.  Although the deadlines can be extended by mutual agreement, and although the CBA does not establish a deadline for every step in this process (for example, how long the supervisor has to attempt to informally resolve the initial grievance), the

bulk of the process should be completed within 65 days. Thus, many employees won't have to worry about staying a grievance because it will be resolved well before the 300-day EEOC deadline.

Watford's own experience belies the majority's claim about the impact of the CBA provision on her decision. Watford filed her grievance regarding her termination on October 13, 2010. That grievance was denied by the superintendent 53 days later on December 6, 2010. Arbitration was scheduled for July 2011, approximately one month before the EEOC deadline for her termination grievance. Watford, however, filed her EEOC charge on February 24, 2011. Thus, Watford made the decision that resulted in the stay of her grievance well ahead of the EEOC deadline, knowing that it would result in her arbitration being held in abeyance. This was not a decision forced on her as a result of timing—Watford had an opportunity for a timely resolution of her grievance, but instead she chose to file with the EEOC without giving the scheduled arbitration a chance.

Second, even if faced with the expiration of the 300-day EEOC deadline, a reasonable employee would not give up her right to judicial resolution of a discrimination claim simply because it means a *delay* in the resolution of her grievance. The procedures and protections outlined in the CBA's grievance provisions pale in comparison to the robust procedures and remedies available to plaintiffs making ADEA and Title VII claims. For example, if a grievance proceeds to arbitration, the employee is no longer in control of her grievance; the CBA provides that it is the union, not the employee, who makes the decisions with respect to arbitration. All of these factors, together, cut strongly against the suggestion that a reasonable person would do anything but file an EEOC charge when faced with such a situation.

Finally, although the majority's decision provides a considerable benefit to employees in the short term—in that an employee has considerable leverage to pursue relief in the forum she prefers and to change forums at her discretion—I question whether it will benefit employees in the long run. There is no obligation for an employer to agree to an expedited grievance procedure. Forcing employers to litigate on two fronts may lead them to abandon this method of resolution altogether. Not only will that increase costs to all parties and delay resolution of

claims, but it runs the risk of undermining arbitration as a method of resolving disputes in these cases.

Because a reasonable employee in Watford's situation would not be dissuaded from filing an EEOC charge or discrimination suit, Watford did not suffer an adverse employment action when the Board stayed her grievance proceedings pursuant to the terms of the CBA. Accordingly, the district court was correct to find that she cannot succeed on her retaliation claims. We should affirm the decision of the district court on this basis.

III.

Finally, the majority goes too far in determining that the CBA provision is "retaliatory on its face." This is, perhaps, the most problematic holding because it is made entirely on the presumption that *Sundance* controls. Although the district court recognized that a facially retaliatory policy is direct evidence of discriminatory intent, it never decided whether the policy was facially retaliatory or whether the CBA constituted direct evidence of retaliation. Instead, the district court limited its holding to the question of an adverse employment action, an element applicable to both the *McDonnell Douglas* burden-shifting and direct-evidence approaches to establishing retaliation. We need not decide anything more than whether Watford suffered an adverse employment action. I would find that she did not as a matter of law. In light of this, she cannot succeed on her retaliation claims, and all other claims have been voluntarily dismissed. I would therefore remand to the district court for entry of judgment in favor of the defendants.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 16-6183

JOYCE WATFORD,
      Plaintiff - Appellant,

    v.

JEFFERSON COUNTY PUBLIC SCHOOLS
      Defendant,

JEFFERSON COUNTY BOARD OF
EDUCATION; JEFFERSON COUNTY TEACHERS ASSOCIATION,
      Defendants - Appellees.

> **FILED**
> Sep 01, 2017
> DEBORAH S. HUNT, Clerk

Before:  DAUGHTREY, MOORE, and GIBBONS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Kentucky at Louisville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk